(No. 89368.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JIMMY RAY PITSONBARGER, Appellant.

*Opinion filed May 23, 2002.*

HARRISON, C.J., and KILBRIDE, J., dissenting.

Robert H. Farley, Jr., of Naperville, and Stephen E. Eberhardt, of Tinley Park, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers

and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Petitioner, Jimmy Ray Pitsonbarger, appeals from orders of the circuit court of Peoria County dismissing 34 of the 35 claims raised in his second post-conviction petition and denying the sole remaining claim after an evidentiary hearing. Because petitioner was sentenced to death for the underlying convictions, his appeal lies directly to this court. 134 Ill. 2d R. 651(a). For the reasons that follow, we affirm the judgment of the circuit court.

## I. BACKGROUND

This court has previously described the facts underlying petitioner's conviction and sentencing in our opinion on his direct appeal. See *People v. Pitsonbarger*, 142 Ill. 2d 353 (1990). Thus, we will summarize here only the proceedings that have occurred since his conviction.

In 1988, petitioner was convicted in a bench trial of the murders of Claude and Alta Brown. The death penalty hearing was held before a jury, which found the petitioner eligible for the death penalty based on the presence of two aggravating factors, and further found that no mitigating factors sufficient to preclude imposition of the death penalty were present. The circuit court sentenced petitioner to death. On direct appeal, this court addressed 14 separate claims of error, affirmed two convictions for intentional murder, vacated four convictions for felony murder, and affirmed the sentence of death. *Pitsonbarger*, 142 Ill. 2d 353. Petitioner's petition for a writ of *certiorari* to the United States Supreme Court was denied. *Pitsonbarger v. Illinois*, 502 U.S. 871, 116 L. Ed. 2d 163, 112 S. Ct. 204 (1991).

In April 1992, petitioner filed a post-conviction peti-

tion pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1992)). The circuit court dismissed the petition without an evidentiary hearing, finding that all seven of the claims raised were either barred by *res judicata,* because they had already been addressed on direct appeal, or waived, because they had not been raised on appeal even though they were available to be raised. Counsel filed a "Motion to Reconsider and Vacate" in May 1992, which the circuit court denied almost 11 months later. The clerk of the court did not give notice of this decision to counsel. Thus, when counsel filed a "Motion to File Late Notice of Appeal" in November 1993, the motion was granted. However, after counsel failed to timely file a brief, this court denied various motions for extensions of time and for reconsideration and eventually dismissed the matter for want of prosecution in June 1994.

Petitioner filed a petition for *habeas corpus* relief in March 1995, in the United States District Court for the Central District of Illinois, raising 11 claims. The district court issued an unpublished decision on October 5, 1995, denying *habeas* relief. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the district court's decision. *Pitsonbarger v. Gramley,* 103 F.3d 1293 (7th Cir. 1997). That judgment was vacated by the United States Supreme Court in *Pitsonbarger v. Gramley,* 522 U.S. 802, 139 L. Ed. 2d 6, 118 S. Ct. 37 (1997) (vacating and remanding for reconsideration in light of *Lindh v. Murphy,* 521 U.S. 320, 138 L. Ed. 2d 481, 117 S. Ct. 2059 (1997)). The court of appeals thereafter entered a revised decision, again affirming the denial of *habeas* relief. *Pitsonbarger v. Gramley,* 141 F.3d 728 (7th Cir. 1998). The Supreme Court denied petitioner's petition for a writ of *certiorari. Pitsonbarger v. Gramley,* 525 U.S. 984, 142 L. Ed. 2d 402, 119 S. Ct. 448 (1998).

On February 28, 1996, while his appeal was pending

before the Seventh Circuit, petitioner filed a second post-conviction petition in the circuit court of Peoria County, raising 35 claims of error. The State responded by filing a motion to dismiss on the basis that the entire petition was time-barred under the statute of limitations contained in section 122—1 of the Act (725 ILCS 5/122—1 (West 1996)). In the alternative, the State argued that all 35 claims were either waived by petitioner's failure to raise them in earlier proceedings or barred by *res judicata*. Petitioner responded that his first post-conviction proceeding was "fundamentally flawed" due to its virtual "abandonment" by post-conviction counsel and, thus, consideration of the claims raised in his second post-conviction petition was not barred by section 122—1 or by the waiver provision contained in section 122—3 of the Act (725 ILCS 5/122—3 (West 1996)). Therefore, he argued, all 35 issues should be addressed. In addition, petitioner argued that one claim in particular—his claim that he was denied a fitness hearing in 1988 due to ineffective assistance of counsel—should be addressed on the merits. Following a hearing on the State's motion on October 31, 1997, the circuit court ruled that "only those paragraphs in the Petition that are directed toward *** the issue of fitness need be answered and the Petition is dismissed in other regards." The State then filed an answer addressing the sole surviving claim, which was the subject of an evidentiary hearing on April 11, 2000.

At the evidentiary hearing, the parties stipulated that prior to and during petitioner's bench trial he was taking psychotropic medication, specifically 10 milligrams of Librium three times a day. Petitioner argued that this fact alone is sufficient to put the burden on the State to prove that he had been fit to stand trial in 1988. Further, petitioner argued that he should be given a new trial because a retrospective fitness hearing more than a decade later could not meet due process standards. Other

than stipulating to the contents of the medication records, the petitioner introduced no evidence and presented no testimony.

The State argued that the mere fact petitioner was receiving medication is not sufficient to require a new trial. Rather, he must demonstrate that trial counsel was ineffective for failing to request a fitness hearing and appellate counsel was ineffective for failing to raise the issue on direct appeal. According to the State, petitioner could prevail on these claims only by demonstrating he would have been found unfit to stand trial if he had been given a fitness hearing in 1988, and he had failed to make the required showing. When the circuit court again denied the State's request to dismiss this claim, the State called two witnesses.

Robert E. Chapman, M.D., a psychiatrist who interviewed petitioner in 1988 to evaluate his fitness to stand trial and the applicability of insanity or intoxication as defenses, testified that he was aware during his interview with petitioner that he had been receiving three 10-milligram doses of Librium per day. Chapman described Librium as "an anti-anxiety medication" and "a minor tranquilizer." During the interview, Chapman found petitioner "oriented, alert, cooperative, [and] inquisitive." Petitioner "showed no evidence of psychosis or other symptoms of a severe mental disease or mental disorder." Further, he showed no evidence of drug side effects such as slurring of speech or staggering or other gait disturbance. Petitioner did not report insomnia or other sleep disturbances. Chapman found petitioner's behavior appropriate and his thought processes intact. Asked for his opinion, within a reasonable degree of medical certainty, of petitioner's fitness to stand trial in 1988, Chapman testified that petitioner "was fit." When specifically asked if that opinion took into account that petitioner was taking Librium at the time, Chapman responded, "Yes."

On cross-examination, Chapman stated that his opinion as to petitioner's fitness for trial in 1988 would not be altered by learning that he subsequently attempted suicide. He also acknowledged that one of the effects of Librium is to cause the patient to be subdued or quiet or to have an emotionless expression, and that the patient might tend to become withdrawn from other people. However, Chapman explained that these effects occur only if the dosage of Librium is "approaching toxic levels." When asked by the court to clarify, Chapman explained that one would have to take "hundreds of milligrams a day" before experiencing these effects.

Phillip Jobe, Ph.D., a professor of pharmacology at the University of Illinois College of Medicine in Peoria, explained that Librium is used primarily for treatment of anxiety as well as to treat insomnia. Jobe was asked to describe, to a reasonable degree of scientific certainty, the effect on a 24- to 25-year-old male, weighing approximately 165 pounds, of three 10-milligram doses of Librium per day. Jobe stated that such a dosage would not impair that person's ability to understand the nature of charges against him or to understand legal proceedings. Further, it would not impair the person's abilities to communicate with counsel, to observe, recollect, or relate occurrences, or to control his motor processes, including facial expressions. Jobe was also asked how long Librium would remain in the system of a 165-pound male after the medication was discontinued. Jobe explained that the drug, including its metabolites, would "essentially [be] gone from most people in ten days to 15 days" and that the drug would be "active" for a much shorter period.

Jobe acknowledged on cross-examination that Librium's side effects include confusion, drowsiness, fainting, and nausea, and "[i]f the dose were sufficiently high," Librium could cause an impairment in decisionmaking

ability. When asked if Librium could have a "different effect" on a person, such as petitioner, with a history of alcohol dependence or in alcohol withdrawal, Jobe explained that Librium is actually "useful in the management of alcohol abstinence syndrome."

Following the testimony of these two witnesses, the court took judicial notice of the testimony of Mortimer Beck, M.D., in the transcript of petitioner's sentencing hearing. Beck, who conducted a psychiatric evaluation of petitioner prior to Chapman's evaluation, is the doctor who prescribed the Librium. Petitioner began receiving the medication the day after his interview with Beck. Thus, Beck's evaluation of petitioner occurred prior to his receiving any medication. Beck found petitioner fit to stand trial.

The record before the circuit court as it considered the testimony of the State's witnesses documented the following sequence of events regarding petitioner's treatment with Librium: April 21, 1988, evaluation by Dr. Beck, who found petitioner fit to stand trial and prescribed the medication; April 22, 1988, medication began; June 13, 1988, evaluation by Dr. Chapman, who also found petitioner fit to stand trial; June 22-23, 1988, bench trial; June 29, 1988, medication terminated because petitioner refused further doses; July 4, 1988, petitioner attempted suicide by ingesting caustic cleaning fluid; September 17, 1988, sentencing hearing began. The court also took judicial notice of records indicating petitioner's age, height, and weight at the time he was taking Librium, which were consistent with the hypothetical questions posed to the witnesses.

Based on this evidence, the circuit court concluded that "[t]here never was a *bona fide* doubt of the petitioner's fitness to stand trial raised at the time of the trial or the sentencing hearing." The court stated that it would find trial counsel ineffective for failing to request a fit-

ness hearing only if petitioner demonstrated "a reasonable probability that if a fitness hearing had been held back in 1988, he would have been found unfit to stand trial." The court then held that petitioner had not only failed to show a reasonable probability, he offered "no evidence at all that he would have been found unfit." Finally, appellate counsel's failure to raise this issue on direct appeal was "not objectively unreasonable." "Accordingly," the court ruled, "all of the claims that survived [the] October 31, 1997, order are now denied."

In the present appeal, petitioner raises three claims of constitutional error, having abandoned 32 of the 35 claims contained in his second post-conviction petition. First, he argues that his sentencing hearing was unfair because the State improperly used peremptory challenges to excuse jurors who expressed reservations about imposing the death penalty. Second, he claims he was deprived of a fair sentencing hearing because two members of the jury engaged in private deliberations. Third, petitioner asserts that the circuit court erred when, after holding an evidentiary hearing, it rejected his claims of ineffective assistance of trial counsel based on failure to request a fitness hearing and ineffective assistance of appellate counsel based on failure to raise that issue on appeal.

These three issues are before this court for the first time, over 10 years after we affirmed petitioner's conviction and sentence on direct appeal. The State urges us to find petitioner's entire second post-conviction petition time-barred under section 122—1 of the Act (725 ILCS 5/122—1 (West 1996)) and to find further that consideration of these three issues is barred by the waiver provision of section 122—3 of the Act (725 ILCS 5/122—3 (West 1996)). The State also argues that the circuit court properly concluded petitioner would not have been found unfit to stand trial if a fitness hearing had been held at that time. Petitioner responds that his first post-

conviction proceeding was fundamentally flawed because he did not receive a reasonable level of assistance of counsel and, therefore, it should not stand as a bar to a subsequent petition, the Act's limitations and waiver provisions notwithstanding.

## II. ANALYSIS

The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). In capital cases, post-conviction proceedings are governed by section 122.2—1(b) of the Act (725 ILCS 5/122.2—1(b) (West 1996)), which requires the circuit court to initially determine "whether the petitioner, if indigent, wants to be represented by counsel. After the petitioner makes that choice, the matter is then docketed for further proceedings." *People v. Thomas*, 195 Ill. 2d 37, 40 (2001). The State must then either answer the petition or move to dismiss it. 725 ILCS 5/122—5 (West 1996); *Thomas*, 195 Ill. 2d at 40. Unless the petition is disposed of on a motion to dismiss, the circuit court, considering the petition and the State's answer, determines whether a hearing is required because the allegations of the post-conviction petition, supported by the trial record and accompanying affidavits, make a substantial showing of a violation of a constitutional right. If not, the petition may be dismissed. If the petition does make a substantial showing of a constitutional violation, the matter proceeds to an evidentiary hearing. *People v. Hobley*, 182 Ill. 2d 404, 428 (1998). For purposes of determining whether an evidentiary hearing is warranted, all well-pleaded facts in the petition and in any supporting affidavits are to be taken as true. *People v. Caballero*, 126 Ill. 2d 248, 259 (1989).

Because this is a collateral proceeding, rather than an appeal of the underlying judgment, a post-conviction

proceeding allows inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal. *Towns*, 182 Ill. 2d at 502. Thus, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered waived. *Towns*, 182 Ill. 2d at 502-03. In addition, two provisions of the Act may bar consideration of the claims raised in the present petition. First, section 122—1(c) establishes a limitations period (*People v. Wright*, 189 Ill. 2d 1, 10 (1999)), beyond which a post-conviction petition will not be heard unless the petitioner "alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122—1(c) (West 1996). Second, at all times relevant to this case, the Act has also provided that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." Ill. Rev. Stat. 1987, ch. 38, par. 122—3; 725 ILCS 5/122—3 (West 1996). Thus, although exceptions may be made in certain circumstances, the Act contemplates the filing of only one post-conviction petition. *People v. Flores*, 153 Ill. 2d 264, 273 (1992).

A trial court's dismissal of a post-conviction petition without an evidentiary hearing is reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 389 (1998). Dismissal of a post-conviction petition following an evidentiary hearing is reviewed for manifest error. *Coleman*, 183 Ill. 2d at 385.

### A. Second Post-Conviction Petition

The State argues that any consideration of petitioner's second post-conviction petition is barred by section 122—3 of the Act. Petitioner argues that he was deprived of his appeal of the dismissal of his initial petition due to the virtual abandonment of his case by counsel. Thus, he urges this court to find that his first post-conviction

proceeding was deficient and that he is, therefore, entitled to consideration of his second petition. Neither party has addressed this question in terms of the cause-and-prejudice test that this court has frequently employed to determine whether making an exception to section 122—3 is warranted.

Review of our prior case law suggests a reason for the parties' oversight—we have been less than crystal clear about whether the cause-and-prejudice test must be applied to the claims raised in a successive post-conviction petition and how the test relates to claimed flaws in the initial post-conviction proceeding. See, *e.g.*, *Flores*, 153 Ill. 2d at 278-79 (discussing the cause-and-prejudice test "parenthetically"); *People v. Szabo*, 186 Ill. 2d 19, 23 (1998), quoting *Flores*, 153 Ill. 2d at 273-74 (successive petition may go forward "only when" proceedings on the initial petition were " 'deficient in some fundamental way,' " but not applying the cause-and-prejudice test); *Wright*, 189 Ill. 2d at 12 (same); *People v. Jones*, 191 Ill. 2d 194, 199 (2000) (stating that *Flores* "adopted" the cause and prejudice test "as the proper means of identifying the extremely narrow class of cases in which a defendant's successive post-conviction petition is entitled to consideration on the merits"); *People v. Holman*, 191 Ill. 2d 204, 210 (2000) (noting that this court "has previously referred to the cause and prejudice standard as an aid in determining whether a successive post-conviction proceeding may proceed"); *People v. Orange*, 195 Ill. 2d 437, 449 (2001) (holding that successive petitions may be allowed where proceedings on the initial petition were deficient and noting that the cause-and-prejudice test has been used "as an aid" to determine whether a successive post-conviction petition may proceed).

This case presents the opportunity to clarify two areas of confusion. First, is the cause-and-prejudice test merely an aid that courts may use to determine whether

a claim raised in a successive petition should be allowed to proceed, or is it the analytical tool that has been adopted by this court for use in all such cases? Second, is a successive post-conviction petition permitted only when the first proceeding was fundamentally deficient, or is a flawed first proceeding but one of the circumstances that may justify consideration of a successive petition?

### 1. *The Cause-and-Prejudice Test*

In an initial post-conviction proceeding, the common law doctrines of *res judicata* and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal. *Towns*, 182 Ill. 2d at 502-03. The doctrine of waiver, however, "is a rule of administrative convenience, not a jurisdictional or absolute bar to procedurally defaulted claims." *People v. Hawkins*, 181 Ill. 2d 41, 53 (1998). Exceptions to this common law principle of judicial administration are made in three situations: "where fundamental fairness so requires; where the alleged waiver stems from the incompetence of appellate counsel; or where facts relating to the claim do not appear on the face of the original appellate record." *People v. Mahaffey*, 194 Ill. 2d 154, 171 (2000). And although the "fundamental fairness" exception " 'escapes precise definition' " (*Mahaffey*, 194 Ill. 2d at 173, quoting *People v. Porter*, 164 Ill. 2d 400, 408 (1995)), we have long defined the fundamental fairness exception in the context of an initial post-conviction petition in terms of the cause-and-prejudice test (see *People v. Owens*, 129 Ill. 2d 303, 317 (1989)).

In the context of a successive post-conviction petition, however, the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute. 725 ILCS 5/122—3 (West 1996). Only when fundamental fairness so requires will the strict application of this statutory bar be relaxed. *Flores*, 153 Ill. 2d at 274.

In *Flores*, we referred "parenthetically" (*Flores*, 153 Ill. 2d at 278-79) to the United States Supreme Court decision in *McCleskey v. Zant*, 499 U.S. 467, 113 L. Ed. 2d 517, 111 S. Ct. 1454 (1991), in which the Court adopted the same cause-and-prejudice test for determining whether successive *habeas corpus* petitions would be allowed that it had previously adopted to determine whether to permit *habeas* adjudication of claims that had been procedurally defaulted in state court. We acknowledged that this test is as appropriate for determining whether fundamental fairness requires relaxation of the statutory bar to a successive petition as it is to determine whether fundamental fairness requires relaxation of the procedural bar of waiver in an initial post-conviction proceeding. *Flores*, 153 Ill. 2d at 278-79. We also noted that the cause-and-prejudice test "is similar to, and accomplishes no more than" the concept of fundamental fairness. *Flores*, 153 Ill. 2d at 279.

Since *Flores*, we have at times used less than explicit language when referring to the cause-and-prejudice test, describing the test as "an aid" or otherwise suggesting that its application is not mandatory. We hold today that the cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122—3 so that a claim raised in a successive petition may be considered on its merits. We reaffirm that even if the petitioner cannot show cause and prejudice, his failure to raise a claim in an earlier petition will be excused if necessary to prevent a fundamental miscarriage of justice. To demonstrate such a miscarriage of justice, a petitioner must show actual innocence or, in the context of the death penalty, he must show that but for the claimed constitutional error he would not have been found eligible for the death penalty. See *Hudson*, 195 Ill. 2d at 124, citing *Sawyer v. Whitley*, 505 U.S. 333, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992).

As applied to the present case, because this is a successive petition in which petitioner makes no claim, of actual innocence or of ineligibility for the death penalty, the claims raised in his petition must be considered waived unless application of the cause-and-prejudice test dictates otherwise.

### 2. *Fundamental Deficiency in the Initial Post-Conviction Proceeding*

"Cause," for purposes of the cause-and-prejudice test, has been defined as " ' "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim' " in an earlier proceeding. *Flores*, 153 Ill. 2d at 279, quoting *McCleskey*, 499 U.S. at 493, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470, quoting *Murray v. Carrier*, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 408, 106 S. Ct. 2639, 2645 (1986). We have frequently observed that a fundamental deficiency in the initial post-conviction proceeding may constitute cause for consideration of issues raised in a subsequent petition. *Orange*, 195 Ill. 2d at 449; *People v. Erickson*, 183 Ill. 2d 213, 223 (1998); *Flores*, 153 Ill. 2d at 273-74. On occasion, however, we have said that "only if" the first proceeding was deficient will a successive petition be considered. See, *e.g.*, *Wright*, 189 Ill. 2d at 12; *Szabo*, 186 Ill. 2d at 23.

Recently, the United States Supreme Court, whose lead we followed in adopting the cause-and-prejudice test, observed:

> " 'Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule [of waiver], we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel *** would constitute cause under this standard.' " *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 144 L. Ed. 2d 286, 303 n.24, 119 S. Ct. 1936, 1949 n.24, quoting *Murray*, 477 U.S. at 488, 91 L. Ed. 2d at 408, 106 S. Ct. at 2645, citing *Reed v. Ross*, 468 U.S. 1, 16, 82 L. Ed. 2d 1, 15, 104 S. Ct. 2901, 2910 (1984).

The specific claim raised in *Strickler*, to which the cause-and-prejudice test was applied, was a claim that conduct by the State had impeded counsel's access to the factual basis for making a *Brady* claim. The Court stated that such conduct would "ordinarily establish the existence of cause for a procedural default." *Strickler v. Greene*, 527 U.S. at 283, 144 L. Ed. 2d at 303, 119 S. Ct. at 1949. Yet the State's failure to disclose *Brady* material prior to trial does not indicate a fundamental deficiency in the first post-conviction proceeding.

In *Reed*, which *Strickler* cited with favor, the Court said:

> "Because of the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur, this Court has not given the term 'cause' precise content. *** Underlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel." *Reed*, 486 U.S. at 13, 82 L. Ed. 2d at 13, 104 S. Ct. at 2909. Further,
>
> "[T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met." *Reed*, 486 U.S. at 14, 82 L. Ed. 2d at 14, 104 S. Ct. at 2909.

The Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for failure to raise the claim in accordance with applicable state procedures." *Reed*, 486 U.S. at 16, 82 L. Ed. 2d at 15, 104 S. Ct. at 2910. Thus, the Supreme Court has not limited the scope of "cause" to situations in which the earlier *habeas corpus* proceeding was deficient.

Some of our prior decisions have suggested that, unlike the Supreme Court, we intended to limit the cause

element of the cause-and-prejudice test to a showing of a fundamental deficiency in the initial post-conviction proceeding. See, *e.g.*, *Szabo*, 186 Ill. 2d at 23-24; *Wright*, 189 Ill. 2d at 12. In other decisions, we have noted that a successive petition may be allowed "when" the initial proceedings were deficient (see, *e.g.*, *Orange*, 195 Ill. 2d at 449), but we did not use the words "only when." To resolve this apparent inconsistency, we reiterate that "cause" in this context refers to any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim in the initial post-conviction proceeding. Thus, when "cause" is based on a fundamental deficiency in the first post-conviction proceeding, the petitioner must show that the deficiency directly affected his ability to raise the specific claim now asserted.

### 3. *Application of the Cause-and-Prejudice Test*

Section 122—3 of the Act does not forbid the filing of a successive petition. Rather, it provides that "[a]ny claim" not raised in the original or an amended petition is waived. 725 ILCS 5/122—3 (West 1996). Thus, the fundamental fairness exception applies to claims, not to petitions, and the cause-and-prejudice test must be applied to individual claims, not to the petition as a whole. See *Wright*, 189 Ill. 2d at 36 (Freeman, C.J., specially concurring, joined by McMorrow, J.) (noting that each claim in a successive petition must be reviewed individually to ascertain whether the claim is barred by section 122—3; if it is barred, the court must then determine whether an exception applies to that claim).

Petitioner argues that his first proceeding was fundamentally flawed by counsel's abandonment of his case on appeal and that he is, therefore, entitled to consideration of all of the claims raised in his second petition. This is, essentially, an argument that the flaw was so pervasive that it undermined the entire proceed-

ing, rendering it entirely unreliable as a means of vindicating his constitutional rights.

Our prior case law does offer some support for applying the "cause" element of the test to the petition as a whole. In *People v. Free*, 122 Ill. 2d 367, 376 (1988), we discussed several older cases in which the prior post-conviction proceedings had been "virtual nullities" and successive petitions had been allowed. We concluded, however, that because the defendant had already been given " 'one complete opportunity to show a substantial denial of his constitutional rights,' " his second post-conviction petition was properly dismissed. *Free*, 122 Ill. 2d at 376-77, quoting *People v. Logan*, 72 Ill. 2d 358, 370 (1978). See also *Whitehead*, 169 Ill. 2d at 369 (treating third petition as an amended petition rather than a successive filing "to ensure that defendant obtain[ed] one complete opportunity to show a substantial denial of constitutional rights").

Petitioner claims that dismissal of his first post-conviction appeal as a result of counsel's failure to file a brief denied him "one complete opportunity," so that all issues raised in his second petition should be considered. Nevertheless, because section 122—3 applies to claims and not to petitions, we hold that a petitioner must establish cause and prejudice as to each individual claim asserted in a successive petition, even if he demonstrates that his initial post-conviction proceeding was deficient in some fundamental way. That is, he must show how the deficiency in the first proceeding affected his ability to raise each specific claim. We need not decide whether an initial proceeding could be so pervasively flawed that cause and prejudice are evident without individual claim-by-claim consideration, because this is not such a case.

In *People v. Johnson*, 192 Ill. 2d 202, 207 (2000), post-conviction counsel filed a brief with this court, but we found the brief to be "so fundamentally deficient that it

preclude[d] review." We granted a remedy in that case, ordering appointment of new counsel and rebriefing of the issues. We did not, however, order that new counsel take the matter back to the starting point and file an amended post-conviction petition. Similarly, in the present case, although we agree with the petitioner that post-conviction counsel's failure to file a brief at all rendered the initial proceeding deficient, we reject his contention that the deficiency was so fundamental that the initial proceeding must been deemed a nullity. Thus, the three issues raised in this appeal should be considered waived unless petitioner demonstrates cause as to each one.

The cause-and-prejudice test, like the test for ineffective assistance of counsel (*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)), is composed of two elements, both of which must be met in order for the petitioner to prevail. Because the petitioner did not frame his argument in terms of cause and prejudice, we will not attempt an item-by-item assessment of any cause he might have for raising these three specific issues in his second petition. Instead, we will consider whether prejudice would result from application of the waiver provision of section 122—3 to these claims. Prejudice, in this context, would occur if the petitioner were denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process. *Flores*, 153 Ill. 2d at 279.

### a. State's Use of Peremptory Challenges

At trial, defense counsel did not object when the State exercised peremptory challenges to excuse certain jurors who expressed mild misgivings about imposing the death penalty. On direct appeal, petitioner questioned whether other jurors were properly excused for cause, an argument that we rejected, but did not question the State's

use of peremptory challenges. See *Pitsonbarger*, 142 Ill. 2d at 381-88. Petitioner now asserts that nine jurors were excused "simply because" they expressed some reservations about the death penalty. He argues that trial counsel was ineffective for failing to object and thus preserve this issue for appeal and appellate counsel was ineffective for failing to include this issue among the 14 claims of error in his direct appeal. Petitioner finally raised this issue in his *habeas corpus* petition and, while that matter was still pending in federal court, included it among the 35 claims of error contained in his second post-conviction petition. The circuit court dismissed this claim without an evidentiary hearing.

Claims of ineffective assistance of counsel at trial and on direct appeal are evaluated under the standard set forth in *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, which requires the defendant to demonstrate *both* deficient performance by counsel and resulting prejudice. Accordingly, if the underlying claim has no merit, no prejudice resulted, and petitioner's claims of ineffective assistance of counsel at trial and on direct appeal must fail. See *People v. Coleman*, 168 Ill. 2d 509, 523 (1995).

We addressed a similar claim in *Coleman*:

"Defendant argues that the trial court erred in allowing the state to exercise peremptory challenges against certain prospective jurors who expressed some reservations about the death penalty, but whose views did not rise to the level of cause under *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, and its progeny. Under *Witherspoon*, a prospective juror may not constitutionally be excused for cause based on general objections to the death penalty on moral or religious grounds. Defendant contends that through the use of peremptory challenges the State was able to achieve what it could not achieve through the use of challenges for cause: 'a jury uncommonly willing to condemn a man to die' [citation]. On several occasions, this court has held that *Witherspoon*

does not limit the use of peremptory challenges. [Citations.] Defendant acknowledges these decisions but urges us to reconsider them." *Coleman*, 168 Ill. 2d at 548-49.

In the present case, petitioner would have us reconsider our holding in *Coleman* by reading *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), which prohibits the State from exercising peremptory challenges purely on the basis of the prospective juror's race, in conjunction with *Witherspoon*, as creating a similar limitation on the State's power to exercise peremptory challenges on the basis of an opinion or point of view expressed by a prospective juror. *Batson* does not support such a reading. *Batson* was decided entirely on equal protection principles (*Batson*, 476 U.S. at 84 n.4, 90 L. Ed. 2d at 79 n.4, 106 S. Ct. at 1716 n.4 (declining to consider sixth and fourteenth amendment arguments)). Although *Batson* has been applied to bar other discriminatory practices in jury selection (see *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 144-45, 128 L. Ed. 2d 89, 106-07, 114 S. Ct. 1419, 1429 (1994) (applying *Batson* doctrine to gender-based peremptory challenges)), it does not apply when peremptory challenges are used to excuse venire members on the basis of an opinion they express during *voir dire*.

We conclude, as we did in *Coleman*, that "we find no persuasive reason to depart from this court's holdings in this area." *Coleman*, 168 Ill. 2d at 549. Because our prior decisions are clear pronouncements on this issue (see *Coleman*, 168 Ill. 2d at 549, *People v. Williams*, 161 Ill. 2d 1, 55-56 (1994), *People v. Howard*, 147 Ill. 2d 103, 136-38 (1991), *People v. Stewart*, 104 Ill. 2d 463, 481-82 (1984)), not only did no prejudice result from failure to raise this issue, neither trial counsel's lack of objection nor appellate counsel's decision not to raise the issue on direct appeal constituted deficient performance.

As a result, we hold that consideration of this claim in a successive petition is barred by section 122—3 of the

Act because petitioner cannot show that prejudice would result from application of the bar. The circuit court properly declined to consider this claim in a successive petition.

b. Jury Deliberations

For purposes of determining whether consideration of this issue is warranted, we take as true all well-pleaded facts in the petition and in the supporting affidavits. *Caballero*, 126 Ill. 2d at 259. During the sentencing phase of petitioner's trial, when deliberations were suspended for the night, the trial court instructed the jurors that "you are most certainly not to deliberate any further tonight and not to start deliberations until you're back here in your jury room tomorrow morning." The affidavits reveal that despite this instruction, two jurors who shared a hotel room discussed the case. One of the jurors, who favored imposing the death penalty, "was able to dispel some of [the other juror's] anxieties and help [her] sort through the confusion that surrounded [her] decision." The next morning, after an hour and fifteen minutes of deliberations, the jury announced its verdict sentencing petitioner to death.

Based on affidavits obtained from these two jurors, petitioner argues that he was deprived of his constitutional right to a fair trial. In addition to revealing improper deliberation, the affidavits also reflect some misunderstanding by these jurors about the proceeding. For example, these jurors believed that all members of the jury had to agree on what specific evidence constituted mitigation sufficient to preclude imposing the death penalty; they believed that a vote of 10 to 2 (as the jury then stood) would result in a "hung" jury and that they had to reach a unanimous decision; and the juror who had already decided in favor of the death penalty advised the undecided juror that the defendant had the burden of proving why he should not be sentenced to death.

Finally, they believed that a sentence of natural life imprisonment would not guarantee defendant would never go free.

In general, a jury verdict is not subject to impeachment by the testimony of the jurors. *Hobley*, 182 Ill. 2d at 457. Thus, a statement by a juror, taken after the jury has rendered a verdict, been polled in open court, and been discharged, is not admissible to impeach the verdict. *Hobley*, 182 Ill. 2d at 457. Strong public policy considerations underlie this rule, which prevents the admission of a juror's affidavit to show the " 'motive, method or process by which the jury reached its verdict.' " *Hobley*, 182 Ill. 2d at 457, quoting *People v. Holmes*, 69 Ill. 2d 507, 511 (1978). As the United States Supreme Court has noted:

> " '[If it is] established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication [then] all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.' " *Tanner v. United States*, 483 U.S. 107, 119-20, 97 L. Ed. 2d 90, 105-06, 107 S. Ct. 2739, 2747 (1987), quoting *McDonald v. Pless*, 238 U.S. 264, 267-68, 59 L. Ed. 1300, 1302, 35 S. Ct. 783, 784 (1915).

This rule, preventing admission of juror testimony to impeach the verdict, does not preclude admission of testimony offered as proof of improper extraneous influences on the jury. *Hobley*, 182 Ill. 2d at 458.

The distinction between "motive, method or process" and "improper extraneous influence" is illustrated in

*Hobley*. We determined that Hobley was not entitled to an evidentiary hearing on his claim that he was prejudiced by the conduct of the jury foreperson, a police officer, who allegedly "sought to intimidate other jurors," claimed to be an expert in proper police conduct, showed the other jurors his gun, " 'elected himself as foreman,' " and, according to one juror, " 'wore her down' " and persuaded her to vote guilty, even though she was not convinced of defendant's guilt. *Hobley*, 182 Ill. 2d at 463. Because no improper extraneous influence penetrated the jury's deliberations, we found that this claim was properly dismissed by the circuit court as an attempt to impeach the method and process by which the jury reached its verdict. *Hobley*, 182 Ill. 2d at 465.

We did, however, determine that Hobley was entitled to an evidentiary hearing on his claim that jury deliberations were influenced by an incident in the hotel dining room while the jury was sequestered. *Hobley*, 182 Ill. 2d at 462. Several men who were also dining in the hotel recognized the jury and shouted out remarks about the defendant and their belief that he was guilty and should be executed. The jurors stated that they were " 'upset,' " " 'scared,' " and felt their lives threatened. Another juror described those who had heard the remarks as " 'extremely shaken' " by the incident. *Hobley*, 182 Ill. 2d at 459.

In the present case, the affidavits offered by petitioner deal exclusively with the content of private jury deliberations, albeit deliberations engaged in improperly and in violation of the court's instructions. This information purports to describe the jury's "motive, method or process." It does not present any evidence of an improper extraneous influence and, thus, may not be used to impeach the verdict.

Petitioner would not have been entitled to an evidentiary hearing on this claim even if he had raised it in his

initial post-conviction petition. He, therefore, will suffer no prejudice if the procedural bar of section 122—3 is strictly applied. The circuit court properly declined to consider this claim.

### c. Petitioner's Fitness to Stand Trial

Petitioner also alleges that the Librium he was taking may have affected his ability to understand and participate in his bench trial and sentencing hearing and may also have affected his appearance and demeanor in the courtroom, influencing how the judge and jury perceived him. Based on the statute that was in effect at the time of his trial ("A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication" (Ill. Rev. Stat. 1987, ch. 38, par. 104—2(a))), he argues that he is entitled to a new trial because the lack of a fitness hearing at the time of trial cannot be remedied by a retrospective fitness hearing conducted more than a decade after the fact. Recognizing that we have previously held that a defendant's right to a fitness hearing on the basis of his ingestion of psychotropic drugs is purely statutory, and, as such, is not cognizable in a post-conviction proceeding (*People v. Mitchell*, 189 Ill. 2d 312, 327 (2000)), he has framed his claim in terms of ineffective assistance of counsel at trial and on direct appeal.

In addition, petitioner urges this court to retreat from our holding in *Mitchell*, 189 Ill. 2d at 338, that a post-conviction petitioner "must show a reasonable probability that, if a section 104—21(a) fitness hearing would have been held, he would have been found unfit to stand trial," and return to the approach of *People v. Brandon*, 162 Ill. 2d 450, 461 (1994), and its progeny, under which a defendant in his situation would be automatically entitled to a new trial. Finally, petitioner claims that *Mitchell*, which places the burden on the petitioner to

prove that he would have been found unfit had a fitness hearing been held in the original proceeding (*Mitchell*, 189 Ill. 2d at 334), is inconsistent with our more recent decision in *People v. Johnson*, 191 Ill. 2d 257, 271 (2000), which held that once the defendant has raised a *bona fide* question of fitness, the State has the burden of proving the defendant to be fit. We reject each of these arguments in turn.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's representation was so deficient as to fall below an objective standard of reasonableness under prevailing professional norms and that the deficient performance so prejudiced defendant as to deny him a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. In *Mitchell*, 189 Ill. 2d at 334, we set out the test for evaluating the prejudice prong of the *Strickland* test when a post-conviction petitioner claims ineffective assistance of counsel on the basis that he was receiving psychotropic drugs at the time of trial or sentencing, but did not receive the fitness hearing he was entitled to by statute. With regard to the performance of trial counsel, the petitioner must show a "reasonable probability that he would have been found unfit if counsel had requested a fitness hearing." *Mitchell*, 189 Ill. 2d at 334. As applied to a claim that appellate counsel failed to raise the issue on direct appeal, the petitioner "must show that the failure to raise the issue was objectively unreasonable and that, but for this failure, a reasonable probability exists that the sentence or conviction would have been reversed." *Mitchell*, 189 Ill. 2d at 332.

A defendant is unfit to stand trial "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 1996). The fundamental purpose of a fitness hearing,

therefore, is "to determine a person's ability to function within the context of a trial." *Mitchell*, 189 Ill. 2d at 335. In *Mitchell*, 189 Ill. 2d at 337, and later in *People v. Jones*, 191 Ill. 2d 194, 200-01 (2000), we examined the trial record for evidence of the defendant's demeanor during trial and his participation in his own defense. We concluded in each case that even if defense counsel had requested a fitness hearing, there was no reasonable probability that the defendant would have been found unfit. *Mitchell*, 189 Ill. 2d at 337; *Jones*, 191 Ill. 2d at 201. In the present case, however, we do not have the benefit of the trial record, so we cannot utilize this approach. We do, however, have the record of the evidentiary hearing, which the petitioner characterizes as a "retrospective fitness hearing."

Before addressing the merits of this claim, we will respond to petitioner's argument that a retrospective fitness hearing cannot remedy the lack of a fitness hearing at the time of his trial. Once a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the State has the burden of proving him fit. *Mitchell*, 189 Ill. 2d at 328-29. Petitioner did not raise a *bona fide* doubt; he merely offered evidence that he had been receiving psychotropic medication at or near the time of trial. See *Mitchell*, 189 Ill. 2d at 330-31 (stating that the mere ingestion of psychotropic drugs does not create *bona fide* doubt). Thus, the burden did not shift to the State. The purpose of the evidentiary hearing was not to retrospectively determine petitioner's fitness, but to determine the probability that if a fitness hearing had been held in 1988, he would have been found unfit to stand trial. The circuit court understood that the precise question before it was whether the petitioner had met the prejudice prong of the *Strickland* test and that the burden was, therefore, on petitioner.

The evidence presented at the hearing demonstrates

that almost three months elapsed between the date of petitioner's last dose of Librium and his sentencing hearing. Based on the testimony of Dr. Jobe, the circuit court could reasonably have concluded that there was no possible psychotropic effect at that time. With regard to petitioner's fitness at the time of the bench trial, two psychiatrists who evaluated him at the time had found him fit, one before he began taking the medication and one while he was taking it. The circuit court could reasonably have concluded, based on the evidence presented, that the small dosage of Librium petitioner was taking had no discernable effect on his demeanor or on his ability to participate in his defense. Therefore, it was not manifestly erroneous for the circuit court to conclude that petitioner would not have been found unfit had a fitness hearing been held in 1988.

As to the performance of trial counsel, the circuit court stated: "[M]y understanding of the law is that today the defendant had to show a reasonable probability that if a fitness hearing had been held back in 1988, he would have been found unfit to stand trial, and I think they not only failed to show a reasonable probability, but really have shown no evidence at all that he would have been found unfit." Regarding the performance of appellate counsel, the circuit court denied petitioner's claim, finding the failure to raise the fitness issue "not objectively unreasonable." Indeed, because the petitioner offered absolutely no evidence in support of his claim, and merely cross-examined the State's witnesses, the circuit court could not possibly have found that he had met his burden.

Thus, we affirm the finding of the circuit court that petitioner has failed to establish that trial counsel's failure to request a fitness hearing and appellate counsel's failure to raise that issue on direct appeal infected his trial and appeal to such a degree that his conviction and sentence violate due process.

Anticipating this result, petitioner urges this court to reject our holding in *Mitchell* and to return to the previous approach of *People v. Brandon*, 162 Ill. 2d 450 (1994). In *Mitchell*, as in the present case, the issue presented was whether counsel had been ineffective for failing to obtain a fitness hearing. We rejected our earlier "automatic reversal" rule that had its origin in *Brandon* and replaced it with a prejudice inquiry.

The present case illustrates the logic of the rule articulated in *Mitchell*. Under the old rule, petitioner would have been entitled to a new trial, despite the fact that the evidence adduced at the hearing overwhelmingly demonstrates that his fitness to stand trial was not affected by the medication. In this case, however, application of the *Mitchell* prejudice inquiry as part of the cause-and-prejudice test protects both the State's interest in finality and the petitioner's interest in fairness. We, therefore, decline to reconsider our holding in *Mitchell*.

Petitioner also argues that our recent decisions in *Mitchell* and *Johnson* reach contradictory results regarding the burden of proof as to a defendant's fitness to stand trial. The two cases are not contradictory. Although both cases involved post-conviction proceedings, they were fundamentally different. In *Johnson*, the issue presented was not the defendant's fitness at the time of trial but, rather, his fitness to proceed with his post-conviction proceedings. We held that on post-conviction, as at trial, the defendant has the initial burden of raising a *bona fide* doubt as to his fitness. Once a *bona fide* doubt is created, the burden then shifts to the State to prove him fit. *Johnson*, 191 Ill. 2d at 269. In the present case, because there is no question of petitioner's fitness at this time and because he must demonstrate ineffective assistance of counsel, he carried the burden of proof, a burden he failed to meet.

In sum, we conclude that the circuit court properly

granted an evidentiary hearing to explore the factual basis for petitioner's claim of ineffective assistance of counsel. At the conclusion of the hearing, the circuit court concluded that petitioner had not demonstrated any prejudice as a result of trial or appellate counsels' actions. The prejudice prong of the cause-and-prejudice test was not shown and the circuit court was correct to dismiss the claim.

### B. Timeliness of Petitioner's Second Post-Conviction Petition

Because we have determined that the petitioner's claims are barred by section 122—3 of the Act, we need not address the additional question posed by the State, that is, whether the limitations period of section 122—1 applies to bar a successive petition, if the claims that are raised in that petition are otherwise justified by the petitioner's demonstration of cause and prejudice.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court. We direct the clerk of this court to enter an order setting Wednesday, November 13, 2002, as the date on which the sentence of death entered by the circuit court of Peoria County shall be carried out. Petitioner shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 2000). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where petitioner is now confined.

*Affirmed.*

CHIEF JUSTICE HARRISON, dissenting:

The proceedings which culminated in Pitsonbarger's convictions and sentence of death were fatally flawed because they did not comport with the new rules enacted

by our court governing the conduct of cases in which the State is seeking the death penalty. For the reasons set forth in my dissenting opinion in *People v. Hickey*, 204 Ill. 2d 585, 631-36 (2001) (Harrison, C.J., dissenting), the procedures contained in those rules are indispensable for achieving an accurate determination of innocence or guilt and are applicable to all capital cases now coming before us. Because Pitsonbarger was tried, convicted and sentenced without the benefit of the new rules, his convictions and death sentence should be vacated, and the cause should be remanded to the circuit court for a new trial.

Even if Pitsonbarger were not entitled to the benefit of the new rules, his sentence of death could not stand. For the reasons set forth in my partial concurrence and partial dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law is void and unenforceable because it violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Absent the new rules, there is no basis for altering that conclusion. At a minimum, Pitsonbarger's sentence of death should therefore be vacated, and he should be sentenced to a term of imprisonment. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(j). Because he was convicted of murdering more than one victim, the term of imprisonment must be natural life. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(c).

JUSTICE KILBRIDE, also dissenting:

I respectfully dissent. For the reasons set forth in my dissents in *People v. Hickey*, 204 Ill. 2d 585, 636-40 (2001) (Kilbride, J., dissenting), and *People v. Simpson*, 204 Ill. 2d 536, 581-85 (2001) (Kilbride, J., dissenting), I believe this cause should be remanded for a new trial conducted in compliance with the new rules governing capital cases.

As I stated in my dissents, the procedures in capital cases prior to this court's adoption of the new rules were inherently unreliable and did not sufficiently protect a defendant's constitutional rights. For this reason, I believe that the new rules should be applied retroactively. *People v. Caballero*, 179 Ill. 2d 205, 220-21 (1997).

In addition, I disagree with the majority's conclusion that defense counsel's failure to file any post-conviction brief is not a fundamental deficiency deeming the initial proceeding a nullity. Instead, the majority holds that defendant must satisfy the cause-and-prejudice test on each issue. 205 Ill. 2d at 463. I believe that the pervasive flaws in defendant's initial proceeding make this precisely the type of case that demands consideration of the claims made in defendant's first petition without application of the cause-and-prejudice test to each individual claim. *Contra* 205 Ill. 2d at 462-64.

In part, the majority's conclusion relies upon *People v. Johnson*, 192 Ill. 2d 202, 207 (2000). In *Johnson*, we ordered new briefs when post-conviction counsel failed to comply with our various briefing rules. The majority notes that *Johnson* did not direct the filing of an amended post-conviction petition. It reasons that the failure to file proper briefs in *Johnson* did not open the door for a defendant to raise constitutional claims in a second post-conviction petition. Therefore, the majority concludes that in this case the issues in defendant's second post-conviction petition are waived unless each satisfies the cause-and-prejudice test.

While I agree that *Johnson* does not open the door for a defendant to assert new constitutional claims not previously raised in the initial post-conviction petition, the majority overlooks the plain logic of *Johnson*'s applicability to issues that were actually asserted in the initial post-conviction petition. In *Johnson*, we stated that "[a]n attorney who files a brief that is so fundamen-

tally deficient that it precludes review by the supreme court has not provided a reasonable level of assistance." *Johnson*, 192 Ill. 2d at 207. The fundamental deficiency in the *Johnson* brief was the failure to comply with citation rules and record cites, among other meaningful but technical rules. *Johnson*, 192 Ill. 2d at 204-07. Here, post-conviction counsel abandoned the proceedings and filed no brief at all. Simply put, it defies logic to conclude that a technically incomplete brief is fundamentally deficient but the failure to file any brief whatsoever and the utter abandonment of the entire proceeding is not just as fundamentally deficient.

Thus, I believe the majority opinion ignores a key issue squarely before us: whether an initial proceeding may be so pervasively flawed as to warrant consideration of those same claims in a subsequent petition without subjecting the individual claims to the cause-and-prejudice test. I believe that it can be and that defense counsel's complete abandonment of the initial post-conviction proceedings is one such circumstance.

" 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' " *United States v. Cronic*, 466 U.S. 648, 654, 80 L. Ed. 2d 657, 664, 104 S. Ct. 2039, 2044 (1984), quoting W. Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956). A defendant is entitled to a reasonable level of assistance of counsel in post-conviction proceedings to assure "one complete opportunity to show a substantial denial of constitutional rights." *People v. Whitehead*, 169 Ill. 2d 355, 369 (1996). Moreover, defense counsel's performance may be so inadequate that defendant's right to assistance of counsel has effectively been denied. *Cronic*, 466 U.S. at 654 n.11, 80 L. Ed. 2d at 665 n.11, 104 S. Ct. at 2044 n.11. If an accused does not receive actual assistance,

then the constitutional guarantee of the right to effective assistance of counsel is violated. *Cronic*, 466 U.S. at 654, 80 L. Ed. 2d at 664-65, 104 S. Ct. at 2044.

Although we generally presume defense counsel to be competent, there are instances where prejudice to the accused is so likely that inquiry into the precise effect of counsel's conduct cannot be justified. *Cronic*, 466 U.S. at 658, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046. The most obvious of these is the complete absence of assistance from counsel. See *Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047.

Here, counsel's abandonment of the first post-conviction proceedings denied defendant even a single complete opportunity to demonstrate his alleged constitutional deprivations and left him without effective assistance of counsel. " 'While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.' " *Cronic*, 466 U.S. at 657, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046, quoting *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir. 1975). The majority's conclusion that the flaws in this case were not so pervasive as to obviate the need for the cause-and-prejudice test is the culmination of defendant's judicial sacrifice. 205 Ill. 2d at 463.

In view of counsel's complete abandonment of the first post-conviction proceedings, I believe that it is improper to apply the cause-and-prejudice test to defendant's entire second post-conviction petition. Accordingly, to the extent defendant's second post-conviction petition claims mirror those raised in his first post-conviction petition, those repeated claims should be considered without application of the cause-and-prejudice test.

Thus, I respectfully dissent.