2022 IL App (1st) 201040-U
No. 1-20-1040
Order filed August 15, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 17433(01) |
| | ) | |
| SHAROD PIERCE, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Justice Coghlan specially concurred.

**ORDER**

¶ 1    *Held*: We grant the Office of the State Appellate Defender's motion to withdraw and affirm the judgment of the trial court, finding any suppressible evidence from Pierce's arguably unconstitutional arrest would not have affected the outcome of his trial; therefore, he could not establish prejudice from failing to raise in an earlier proceeding the argument that investigative alerts are unconstitutional under the Illinois Constitution.

¶ 2    The trial court denied Sharod Pierce leave to file a successive post-conviction petition in which he raised a claim that his warrantless arrest violated the Illinois Constitution based, as it was, on an investigative alert. On appeal, the Office of the State Appellate Defender (OSAD) has

moved to withdraw because, in its view, Pierce's claim "presents no potentially meritorious issues for review." We agree, though on a limited basis. The only piece of evidence that could have been suppressed had Pierce's constitutional attack on his arrest been successful—an in-person lineup identification by two witnesses—would have had a negligible impact on his trial.

¶ 3    Before addressing the motion, we remind OSAD that until the Illinois Supreme Court decides *People v. Dossie*, No. 127412 (fully briefed as of June 10, 2022), claiming investigative alerts are unconstitutional under the Illinois Constitution may be justified, assuming an arguable case that the unconstitutional arrest led to meaningfully suppressible evidence. With that reminder, we grant OSAD's motion.

¶ 4                                    Background

¶ 5    The State charged Sharod Pierce with first degree murder for the shooting death of Anthony Carter. Chicago police officers had arrested Pierce under the authority of an investigative alert "with probable cause." Pierce's trial counsel did not move to suppress evidence gleaned from his arrest or challenge the investigative alert procedure leading to his arrest.

¶ 6    Pierce chose a jury trial, and three eyewitnesses testified. We will use their initials because they were all juveniles at the time of the offense, and two were juveniles at trial.

¶ 7    C.C. provided a written statement explaining he was with a group of friends when they split up so the rest of the group could go down the street to buy marijuana. C.C. heard gunshots. Though he did not see the shooting, C.C. identified Pierce as a person he saw running with a gun. At trial, C.C. recanted his written statements, testifying that he was with his girlfriend the night of the shooting and did not see Pierce the night of the shooting and, indeed, had never met Pierce before.

¶ 8     C.M., the victim, and R.W. were hanging out together on the night of the shooting. They belonged to a gang and sold marijuana. The group went to get cigarettes when Pierce approached them. Pierce originally put a gun in R.W.'s face, but when the victim walked over, Pierce shot him from about five feet away. C.M. talked to the police the next day and identified Pierce in a photo array; he later identified Pierce in a lineup after Pierce's arrest.

¶ 9     R.W., who was 15 at the time, was the victim's cousin. R.W. explained that, as the group of friends walked back from a gas station, someone called out to C.M., who crossed the street to talk with them. R.W. tried to follow until the person who shouted pointed a gun at him. After R.W. "begged for [his] life," the victim walked up. R.W. did not see what happened next but heard a "pow" and then ran as he heard more gunshots.

¶ 10    R.W. also testified that his uncle told him and C.M. that they should identify Pierce as the shooter. R.W. later identified Pierce in a photo and a lineup. After this testimony, the State introduced R.W.'s earlier written statement in which he had unequivocally identified Pierce as the shooter. The parties also stipulated that an investigator retained by Pierce's counsel to interview R.W., who never said anything about his uncle prompting him with the identity of the person who shot the victim.

¶ 11    The State introduced the testimony of several police officers and assistant state's attorneys. All of whom corroborated the provenance of the eyewitnesses' previous statements identifying Pierce as the shooter.

¶ 12    After the jury found Pierce guilty, the trial court sentenced him to 60 years in prison. We affirmed Pierce's conviction and sentence on direct appeal. *People v. Pierce*, 2014 IL App (1st)

131806-U. Pierce then filed an initial post-conviction petition raising several claims irrelevant for our purposes.

¶ 13    Pierce filed a successive post-conviction petition, the subject of this appeal, in which he claimed that officers unlawfully arrested him based on an investigative alert. Pierce relied on our then-published opinion in *People v. Bass*, 2019 IL App (1st) 160640, *affirmed in part and vacated in part*, 2021 IL 125434. The trial court agreed that Pierce established cause for failing to raise his claim sooner. But, relying on *People v. Braswell*, 2019 IL App (1st) 172810, which disagreed with our analysis of investigative alerts in *Bass*, the court found Pierce had failed to establish prejudice. Pierce appealed, and his appellate counsel has now moved to withdraw.

¶ 14                                    Analysis

¶ 15    The Post-Conviction Hearing Act provides criminal defendants with a remedy for violations of their constitutional rights at their original trial. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). Absent exceptions, "the Act contemplates the filing of only one post-conviction petition." *Id.* at 456. Yet, we may relax the bar on successive post-conviction petitions where "a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2020). To show cause, a petitioner must identify an objective factor impeding their ability to bring their claim in initial post-conviction proceedings. *Id.* A petitioner can show prejudice by showing that failure to bring the claim earlier "so infected the trial that the resulting conviction *** violated due process." *Id.* We review the trial court's denial of leave to file a successive post-conviction petition *de novo*. *Pitsonbarger*, 205 Ill. 2d at 456.

¶ 16 Pierce's counsel agrees, correctly we think, that there is at least an argument to be made that Pierce satisfied cause for failing to raise his constitutional challenge to investigative alerts sooner. See *People v. Tripp*, 407 Ill. App. 3d 813, 816 (2011) (development in law, occurring after filing of initial collateral proceedings, can satisfy defendant's burden to show cause under cause-and-prejudice test). Pierce filed his first post-conviction petition in 2015, and we did not issue our original decision in *Bass* until four years later.

¶ 17 According to Pierce's counsel, she cannot ethically advance Pierce's claim that he suffered prejudice from his inability to rely on *Bass* in his initial post-conviction proceedings. Counsel gives three reasons: (i) "*Bass* has been overturned but [the cases disagreeing with it] remain good law," (ii) the officers who arrested Pierce would be able to rely on the good faith exception because Pierce's arrest was supported by independent probable cause, (iii) the only evidence subject to exclusion were Pierce's claim successful would not have impacted the outcome of his trial. We agree only with counsel's third point.

¶ 18 That our original opinion in *Bass* has been vacated and panels of the appellate court have disagreed with *Bass* carries no weight. Counsel's obligation to withdraw is triggered by her ethical obligations of candor to the tribunal, not her assessment of the likelihood of success of her argument on appeal. See *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 9 (discussing counsel's ethical obligations not to raise issues of no *arguable* merit on appeal) (emphasis added). But the same ethical rule requiring counsel to withdraw countenances proper arguments made even in what may seem like the face of overwhelming contrary authority. See *id.* (discussing Ill. R. Prof. Conduct (2010) R. 3.1 (eff. Jan. 1, 2010) (allowing arguments that have "basis in law" even if those arguments require claims that existing law should be modified or reversed).

¶ 19     For a brief period after we decided *Bass*, a number of panels in this district and outside of it rejected its analysis of the unconstitutionality of investigative alerts. *People v. Harris*, 2022 IL App (3d) 200234, ¶ 12; *People v. Butler*, 2021 IL App (1st) 171400, ¶ 55; *People v. Little*, 2021 IL App (1st) 181984, ¶ 63 (collecting remaining four cases from the First District). But some members of this court still believe *Bass* was correctly decided. See *People v. Smith*, 2022 IL App (1st) 190691, ¶¶ 55-99 (opinion of Pucinski, J., joined by Hyman, P.J.) (explaining and re-adopting the reasoning of *Bass*). And critically, our supreme court has not weighed in on *Bass*'s substantive constitutional analysis of investigative alerts. See *Bass*, 2021 IL 125434, ¶ 31; but see *People v. Dossie*, 2021 IL App (1st) 201050-U, *leave to appeal allowed*, No. 127412 (Ill. Sep. 29, 2021) (briefing concluded June 10, 2022).

¶ 20     So, at this point, counsel may not have a high statistical likelihood of success in arguing prejudice from failure to raise the unconstitutionality of investigative alerts in an earlier proceeding. But until our supreme court decides *Dossie*, nothing prevents making the argument.

¶ 21     We also reject withdrawal for the reason that the State might raise some sort of good faith defense to applying the exclusionary rule. Counsel points out that officers had independent probable cause, separate from the investigative alert, so the officers acted in good faith despite the investigative alert. We think this argument is premature. The State cannot participate at the leave-to-file stage of successive post-conviction proceedings. *People v. Lusby*, 2020 IL 124046, ¶ 29. And the State is not required to argue the good faith exception to the exclusionary rule. See 725 ILCS 5/114-12(b)(1) (West 2014) (State "may urge" officer's conduct was done in good faith). Indeed, the State can forfeit an argument based on good faith by failing to raise it (or at least, it would not be unethical for counsel to so argue). See *People v. Davis*, 2021 IL App (3d) 180146,

¶ 103 (McDade, P.J. specially concurring). Because reliance on the good faith exception to the exclusionary rule would be speculative at this stage, we reject it as grounds on which to grant counsel's motion to withdraw.

¶ 22    We agree with counsel that Pierce cannot establish prejudice given the small quantum of evidence that could have been suppressed even if a hypothetical motion to suppress had been granted. Counsel argues, and our review of the record confirms, that the sole evidence officers obtained based on Pierce's arrest were the live lineup identifications made by R.W. and C.M. But, R.W. and C.C. had already identified Pierce as the shooter in photo arrays and had given written statements saying Pierce was the shooter. We recognize that R.W. and C.C. eventually recanted their written statements, but the State brought in a host of other evidence verifying them. To the extent there is a credibility contest about the veracity of the written statements, that contest is no weaker or stronger for the lack of the in-person lineup identifications (assuming they had been suppressed). Indeed, we described the evidence against Pierce as "overwhelming" on direct appeal. *Pierce*, 2014 IL App (1st) 131806-U, ¶¶ 58, 62.

¶ 23    We grant OSAD's motion to withdraw. Though we do not share counsel's pessimism about *Bass*—and reject it as a basis to grant the motion—we agree the evidence against Pierce was strong enough that any suppressible evidence taken out of the State's case could not have affected the outcome of his trial.

¶ 24    Motion granted.
¶ 25    Judgment affirmed.

¶ 26    JUSTICE COGHLAN, specially concurring:

¶ 27    Although I agree with the majority's conclusion that the Office of the State Appellate Defender's motion to withdraw as counsel on appeal should be granted, I disagree with the

majority's reasoning in reaching that conclusion. For all of the reasons set forth in the State Appellate Defender's motion to withdraw and supporting memorandum, this appeal presents no potentially meritorious issues for review. Therefore, the State Appellate Defender should be permitted to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In my view, no further analysis is warranted.