**NOTICE**
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180305-U

NO. 4-18-0305

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
July 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Clark County |
| LUTHER J. SANDERS, | ) | No. 94CF5 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Tracy W. Resch, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's denial of defendant's motion for leave to file his successive postconviction petition.

¶ 2    In March 2018, defendant, Luther J. Sanders, filed *pro se* a motion for leave to file his third postconviction petition. In April 2018, the circuit court entered a written order denying defendant leave to file his successive postconviction petition.

¶ 3    Defendant appeals, contending the circuit court erred by denying him leave to file a claim his *de facto* life sentence is unconstitutional because the sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11) as applied to him. We affirm the circuit court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5            On March 25, 1994, defendant entered partially negotiated pleas of guilty to

charges of first degree murder (720 ILCS 5/9-1(a)(1) (West 1992)) of Jerry Darling and

conspiracy to commit first degree murder of Wesley Hall (720 ILCS 5/8-2(a) (West 1992)).

Other charges of murder were nol-prossed, and the prosecution agreed not to seek a capital or a

natural life sentence in exchange for defendant's agreement not to seek appellate review of the

circuit court's ruling or the applicability of the extended-term sentencing provisions. The

prosecution reserved the right to seek both extended and consecutive terms of imprisonment with

a maximum cap of 114 years, but the sentence to be imposed was left open pending presentence

investigation.

¶ 6            The parties stipulated to a factual basis for the guilty plea based partially on a

confession by defendant given after his arrest. The court found the factual basis sufficient. The

court inquired as to the free and voluntary nature of the plea, where defendant stated he

graduated from high school but had limited ability to read and write. Defense counsel confirmed

defendant was able to understand the proceedings and was competent to plead guilty, although

he was functionally illiterate. Counsel disclosed to the court defendant's school records and

history of seizures. The court accepted defendant's guilty plea and ordered the preparation of a

presentence investigation report (PSI).

¶ 7            On May 24, 1994, defendant filed a motion for neurological testing. The motion

referenced seizures defendant had suffered as a child and questioned " 'whether some of

[defendant's] behavior problems might not be temporal lobe related.' " A medical note dated five

years earlier characterized defendant's electroencephalogram (EEG) as "normal." The motion

requested the circuit court order EEG testing to determine "whether or not any type of 'temporal

lobe abnormalities' might relate in any manner to the judgment and behavior of [defendant]" in relation to his conviction. At a hearing held the same day, the court denied defendant's motion, finding (1) there was no medical record of any seizures since December 1978, (2) a letter included from Dr. W. E. Scully suggesting the possibility of behavioral problems was speculative, and (3) medical testing would not produce evidence relevant to sentencing.

¶ 8        On May 26, 1994, defendant's sentencing hearing commenced. Defendant renewed his motion for neurological testing, and the circuit court reserved ruling on the motion. In aggravation, the State presented evidence as to the nature of the murders, victim impact statements from relatives of the victims, and testimony from Clark County Sheriff's Office investigator Jerry Lorton as to defendant's lack of visible remorse when interviewed.

¶ 9        In mitigation, Charles Shotts Jr., defendant's neighbor, described defendant as helpful and cheerful, stating the murders were out of character for defendant where defendant had "never exhibited anything that would even lead to hurting somebody, let alone taking a life." Peggy Sanders, defendant's father's wife, described defendant as a good person. She stated she could not believe defendant had been involved in the murders because he was not violent in any way. Betty Ortiz, defendant's mother, testified defendant was raised by his grandmother and she did not have a relationship with him until after he graduated high school. Ortiz stated defendant would do anything asked of him, describing him as a follower. Gladys McManus, defendant's sister, testified as to defendant's childhood and living situation. McManus testified defendant was diagnosed with epilepsy. McManus also stated she "just couldn't believe" defendant was involved in the murders.

¶ 10        Defendant testified he had been diagnosed with epilepsy as a child and was prescribed Dilantin. At some point, the doctor no longer prescribed the medication, but defendant

could not remember when he stopped taking the medication. Defendant claimed to have a seizure in jail on April 18, 1994. Defendant described his childhood, including physically abusive behavior from his uncle. Defendant testified he had been placed in special education classes in elementary school and through high school. He had obtained a CDL license and attempted to join the military but could not pass the tests. Defendant described his relationship with his co-defendant, Victor Phillippi, and discussed at length his involvement in the murders. Defendant expressed he was sorry for his involvement and found religion since his incarceration.

¶ 11        The State requested extended term and consecutive sentencing for a term totaling 114 years in the Department of Corrections. Defense counsel argued extended term sentencing and consecutive sentencing were not appropriate, requesting a term of incarceration at the lower end of the possible term available.

¶ 12        The circuit court denied defendant's renewed motion for neurological testing on the previously decided grounds. The court stated it observed defendant's demeanor throughout the proceedings and reviewed the evidence presented. The court determined "while the Defendant may be in the low average range of intellectual functioning, he is not mentally retarded."

¶ 13        In sentencing defendant, the circuit court determined, "[T]hough this Defendant has some intellectual limitations, he is not mentally retarded, and any limitations he has did not cause or contribute to his involvement in these crimes." The court found no mitigating factors applied "in a direct or significant way[,]" reviewing all the statutory mitigating factors individually. In aggravation, the court noted the physical harm of the crimes, as well as defendant's prior criminal activity. The circuit court found the crimes "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." In addition, the court

determined consecutive sentencing should apply to protect the public and to avoid deprecating the seriousness of the crime. The circuit court sentenced defendant to consecutive, extended terms of 100 years' imprisonment for murder and 14 years' imprisonment for conspiracy to commit murder.

¶ 14    This court affirmed the convictions and sentences on direct appeal. *People v. Sanders*, 281 Ill. App. 3d 1149 (1996) (table) (unpublished order under Supreme Court Rule 23). Defendant filed a postconviction petition, and the circuit court summarily dismissed the petition. Defendant appealed. This court found defendant's 14-year extended term sentence for conspiracy to commit murder void (see 730 ILCS 5/5-8-2(a)(4) (West 1996)) and reduced the 14-year extended-term sentence to a 7-year term, otherwise affirming the dismissal. *People v. Sanders*, 301 Ill. App. 3d 1111 (1998) (table) (unpublished order under Supreme Court Rule 23).

¶ 15    On October 16, 2000, defendant filed a second postconviction petition alleging his extended-term sentences were unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed defendant's petition as frivolous and patently without merit, and this court affirmed the dismissal. *People v. Sanders*, 328 Ill. App. 3d 1106 (2002) (table) (unpublished order under Supreme Court Rule 23).

¶ 16    On March 22, 2018, defendant filed a motion for leave to file a third postconviction petition. In his motion, defendant first addressed the cause and prejudice test, asserting his issues were based on substantial changes in the rules of criminal procedure, noting the Supreme Court's decisions in *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and the First District's decision in *People v. House*, 2015 IL App (1st) 110580, 72 N.E.3d 357, all of which were decided after the circuit court dismissed defendant's second postconviction petition. Defendant thereafter argued

- 5 -

he was "maneuvered" into pleading guilty, his prior motion for neurological testing was improperly denied, and his *de facto* life sentence violated the United States and Illinois constitutions. In support of his final argument, defendant, who was 23 years old when he committed the crimes, cited (1) *Miller*, *Graham*, and *Roper*'s consideration of continuing brain development in adolescents, (2) the *House* decision to apply such considerations to a defendant over the age of 18, and (3) experts regarding the developing brain and neuroscientific evidence. The circuit court denied defendant's motion, finding *res judicata* barred defendant's first two claims and defendant's final claim failed to allege a substantial denial of his constitutional rights in addition to being forfeited.

¶ 17        This appeal followed.

¶ 18                            II. ANALYSIS

¶ 19        Defendant appeals, challenging only the circuit court's denial of his request for leave to file his constitutional challenge to his *de facto* life sentence.

¶ 20                        A. Standard of Review

¶ 21        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2016)) provides a means to collaterally attack a criminal conviction based on a substantial denial of a defendant's state or federal constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. Beaman*, 229 Ill. 2d 56, 71, 890 N.E.2d 500, 509 (2008). Issues adjudicated on direct appeal or a previous collateral proceeding are barred by *res judicata*, and issues that could have been raised but were not are forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. The Act contemplates the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621

(2002). A defendant must obtain leave from the circuit court in order to file a successive petition under the Act. 725 ILCS 5/122-1(f) (West 2016).

¶ 22    To obtain leave to file a successive postconviction petition, a defendant must do one of the following: (1) show cause and prejudice for the failure to raise a claim in his or her earlier petition or (2) set forth a colorable claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459. Cause is defined as "some objective factor external to the defense" that prevented the defendant from raising the claim in an earlier proceeding. (Internal quotation marks omitted.) *Id.* at 460. Prejudice is an error so infectious to the proceedings that the resulting conviction or sentence violates due process. *Id.* at 464. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 38, 38 N.E.3d 1256.

¶ 23                              B. Cause and Prejudice

¶ 24    On appeal, defendant argues the circuit court erred in denying him leave to raise an as-applied constitutional challenge to his *de facto* life sentence based in part on *Miller* and its progeny in his third postconviction petition. Defendant makes no claim of actual innocence, so we limit our review to the cause and prejudice exception to the general rule against the filing of successive postconviction petitions.

¶ 25    The cause-and-prejudice test establishes a higher standard than the frivolous-or-patently-without-merit standard used for first-stage proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35, 21 N.E.3d 1172. A defendant seeking leave to file a successive petition must "submit enough in the way of documentation to allow a circuit court to make that determination." (Internal quotation marks omitted.) *Id.* Our supreme court has held, "leave of court to file a successive postconviction petition should be denied when it is clear, from a review

of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* "In other words, the court must determine whether [the] defendant has made a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. If such a showing has been made, leave should be granted and the petition "advances to the three-stage process for evaluating postconviction petitions," at which point "the State [has] an opportunity to seek dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *Id.* ¶ 26.

¶ 26　　　　　In a progression of cases involving the sentencing of juvenile offenders, the United States Supreme Court has held the eighth amendment to the United States Constitution prohibits capital sentences for juveniles who commit murder (*Roper*, 543 U.S. at 578-79), mandatory life sentences without the possibility of parole for juveniles who commit nonhomicide offenses (*Graham*, 560 U.S. at 82), and mandatory life sentences without the possibility of parole for juveniles who commit murder (*Miller*, 567 U.S. at 489). In *Roper*, *Graham*, and *Miller*, the Court made clear "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. 471. Specifically, the Court noted three significant differences between juveniles and adults. First, a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." (Internal quotation marks omitted.) *Id.* "Second, children are more vulnerable to negative influences and outside pressures" because of their limited control over their own environment and their lack of the ability to remove themselves from crime-producing settings. (Internal quotation marks omitted.) *Id.* Third, their characters are not as "well formed" as an adult's, their traits are "less fixed," and their

"actions [are] less likely to be evidence of irretrievable depravity." (Internal quotation marks omitted.) *Id.* Following *Miller*, courts sentencing juveniles must take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

¶ 27　　　　In *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 736 (2016), the Supreme Court held *Miller* applies retroactively. The Supreme Court made clear *Miller* did not merely create a procedural requirement but created a new substantive rule of constitutional law which applies to a specific set of individuals. *Id.* at 734, 736. The Court explained *Miller* determined a life sentence without parole for a juvenile is "excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.' " *Id.* at 734 (quoting *Roper*, 543 U.S. at 573). The Court indicated *Miller* rendered life without parole an unconstitutional penalty for the class of juvenile offenders "whose crimes reflect the transient immaturity of youth." *Id.* at 734. Therefore, the Court held *Miller* created a substantive rule of constitutional law which applies retroactively because there was a significant risk the vast majority of juvenile offenders faced a punishment the law could not impose on them. *Id.* at 734, 736.

¶ 28　　　　Noting the language the Court used in *Miller* "is significantly broader than its core holding," and "[n]one of what the court said is specific to only mandatory life sentences," (*People v. Holman*, 2017 IL 120655, ¶ 38, 91 N.E.3d 849), our supreme court has taken this line of cases even further, holding *Miller* applies both to discretionary sentences of life without parole for juvenile defendants (*id.* ¶ 40) and *de facto* life sentences of forty years or more for such defendants (*People v. Buffer*, 2019 IL 122327, ¶ 40, 137 N.E.3d 763).

¶ 29　　　　Our supreme court has also raised the possibility the principles established in these cases might apply—on a case-by-case basis—to young adult offenders who were over the

age of 18 at the time of their offenses. In *People v. Harris*, 2018 IL 121932, ¶¶ 37, 53, 120 N.E.3d 900, an 18-year-old defendant argued on direct appeal *Miller* protections for juveniles should be applied to all "young adults under the age of 21," and his mandatory aggregate sentence of 76 years of imprisonment thus violated both the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. The court rejected the defendant's facial challenge, noting the Supreme Court in *Roper* limited direct application to those under the age of 18, on the basis "a line must be drawn" somewhere. (Internal quotation marks omitted.) *Id.* ¶¶ 45, 60. The court agreed a young adult offender could make an as-applied challenge to a life-sentence, but because the defendant in *Harris* had not raised such a challenge in the circuit court, no evidentiary hearing was held and the record included no findings regarding characteristics of the defendant specifically pertaining to his youth. *Id.* ¶ 46. The defendant's challenge was premature because the record did not "contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applie[d] to defendant's specific facts and circumstances." *Id.* ¶ 46. The court concluded the defendant's challenge would be more appropriately considered in a postconviction petition. *Id.* ¶ 48.

¶ 30    In *Harris*, the court largely relied upon its earlier analysis of these issues in *People v. Thompson*, 2015 IL 118151, 43 N.E.3d 984. In *Thompson*, a 19-year-old defendant attempted to raise an as-applied constitutional challenge to his mandatory natural life sentence for the first time on appeal from the dismissal of a petition for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). *Thompson*, 2015 IL 118151, ¶¶ 1, 4. He argued eighth amendment *Miller* considerations should apply with " 'equal force' to individuals between the ages of 18 and 21." *Id.* ¶ 21. The defendant exclusively relied on the

evolving science regarding juvenile maturity and brain development in support of this position. *Id.* ¶ 38. The court held the defendant's as-applied challenge under *Miller* was forfeited because it was not a type of challenge recognized as being exempt from the typical rules of forfeiture. *Id.* ¶ 39. The court noted in *dicta*, however, the defendant's as-applied challenge was really a facial challenge because he relied exclusively on the evolving science of brain development, and the record contained "nothing about how that science applie[d] to the circumstances of [the] defendant's case, the key showing for an as-applied constitutional challenge." *Id.* ¶ 38.

¶ 31          After the *Harris* and *Thompson* decisions, Illinois courts have had to examine at what age a young adult may make an as-applied *Miller* challenge in a postconviction proceeding. In *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 17, 23, 142 N.E.3d 765, the court considered the second-stage dismissal of a 19-year-old defendant's postconviction petition, in which he asserted in part his mandatory life sentence violated the proportionate penalties clause. After discussing the evolving science regarding brain development and considering our supreme court's decision in *Harris*, the *House* court concluded the line drawn at 18 years of age demarcating adulthood for legal purposes was "somewhat arbitrary." *Id.* ¶¶ 55-56. It held the defendant's mandatory life sentence violated the proportionate penalties clause and shocked the moral sense of the community because of the "defendant's age, his family background, his actions as a lookout as opposed to being the actual shooter, and [his] lack of any prior violent convictions[.]" *Id.* ¶ 64. The court noted the defendant's age, coupled with his relevant culpability, created questions regarding the "propriety of a mandatory natural life sentence for a 19-year-old defendant convicted under a theory of accountability." *Id.* ¶ 46.

¶ 32          Courts faced with cases in which a defendant (1) played a more active role in the crime or (2) received a discretionary rather than a mandatory sentence have distinguished *House*

on one or both of these bases. See, *e.g.*, *People v. Ramsey*, 2019 IL App (3d) 160759, ¶¶ 22-23, 143 N.E.3d 865 (rejecting an 18-year-old defendant's proportionality claim and noting he was the sole actor who committed the offenses) and *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 1, 41 (finding an 18-year-old defendant was not entitled to a new sentencing hearing because he was an active participant in the crimes and received a discretionary sentence). Here, although defendant did not pull the trigger himself, defendant's role in the crimes was much more active than merely serving as a lookout, and defendant received a discretionary sentence. However, we need not consider whether these two factors are sufficient to distinguish defendant's claims from *House* because we have found no support for application the of the *Miller* principles to defendants who were more than 20 years old at the time of their crimes.

¶ 33        In *People v. Hoover*, 2019 IL App (2d) 170070, 131 N.E.3d 1085, for example, the court considered a 22-year-old's as-applied sentencing challenge under the proportionate penalties clause and rejected the defendant's claim, finding the defendant did not satisfy the cause prong of the cause-and-prejudice test because the proportionate penalties clause was always in existence, therefore the defendant could have raised a proportionate penalties challenge at the time of his direct appeal. *Id.* ¶¶ 19, 37.While not necessarily agreeing with the Second District that evolving caselaw extending *Miller*'s application could never satisfy the cause prong, it is clear *Hoover* provides no support for the argument the law as it currently stands establishes individuals like defendant—who were 21 years of age or older at the time of their offenses—may bring as-applied challenges like those the *Harris* court was asked to consider for offenders between the ages of 18 and 20.

¶ 34        In *People v. Suggs*, 2020 IL App (2d) 170632, ¶¶ 30-44, 146 N.E.3d 892, the court likewise affirmed the summary dismissal at the first stage of an initial postconviction

petition where the defendant, who was 23 years old at the time of his offense, raised eighth amendment and proportionate penalties challenges to his *de facto* life sentence. The *Suggs* court noted, although "society has drawn lines at ages 18 and 21 for various purposes," the defendant failed to "point to any line, societal, legal, or penological, that is older than 21 years." *Id.* ¶ 35. The court concluded while it may seem "but a short step" to apply the *Miller* factors to an 18-year-old offender, "it is a much greater leap to extend [them] to a 21-year-old, and an even greater leap to apply [them] to a 23-year-old," such as the defendant in that case. *Id.*

¶ 35         Additionally, in *People v. Figueroa*, 2020 IL App (2d) 160650, ¶¶ 86-89, the court ultimately did not address the as-applied proportionate penalties challenge of a defendant who was 22 years old at the time of his offense, finding instead his claim, made for the first time on direct appeal, was premature. None of these cases support the extension of the law defendant proposes.

¶ 36         Moreover, the secondary source defendant references on appeal does not advocate for the extension of the *Miller* principles to young adults over the age of 21. See Elizabeth S. Scott *et al.*, *Young Adulthood As a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 Fordham L. Rev. 641, 664 (considering the advantages of giving juvenile courts jurisdiction over young adults 21 years old or younger but concluding scientific evidence does not justify an institutional reform of that magnitude.)

¶ 37         We note further defendant's arguments as to his particular mental development due to his intellectual limitations also do not support extending the law. After this case was fully briefed, our supreme court considered *People v. Coty*, 2020 IL 123972. As defendant references, the First District determined the intellectually disabled defendant's discretionary life sentence violated the proportionate penalties clause. *Id.* ¶¶ 14-15. However, our supreme court reversed,

holding although *Miller* is based in part on the lesser culpabilities of youth, characteristics those with intellectual disabilities tend to share, "the *Miller* Court's decision is founded, principally, upon the *transient* characteristics of youth, characteristics not shared by adults who are intellectually disabled." (Emphasis in original.) *Id.* ¶ 39. Therefore, where juveniles, through neurological development may grow out of such deficiencies, such growth was not a prospect for the 46-year-old intellectually disabled adult in question. *Id.* ¶ 40. We decline to extend the *Miller* principles where "[t]he rehabilitative prospects of youth do not figure into the sentencing calculus" as with intellectually disabled defendants. *Id.*

¶ 38　　　　Defendant is correct there have been changes in the law regarding sentencing "youthful offenders" and those with "intellectual disabilities," and we have discussed those changes above. However, the law has not changed sufficiently for defendant to meet the high burden of establishing cause and prejudice to file a successive petition. We acknowledge the cases defendant relies on were not available to him at the time of his prior postconviction petitions, but their holdings do not establish defendant is entitled to the relief he seeks. Our supreme court has not recognized as-applied sentencing challenges seeking application of the *Miller* sentencing factors for defendants more than 20 years old at the time of their offenses and with intellectual deficits.

¶ 39　　　　　　　　　　　　　III. CONCLUSION

¶ 40　　　　We affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 41　　　　Affirmed.