NOTICE
Decision filed 10/28/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190099-U

NO. 5-19-0099

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 92-CF-181 |
| | ) | |
| ANTHONY B. TUCKER, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in denying defendant's motion for leave to file a successive postconviction petition where *People v. Smith*, 233 Ill. 2d 1 (2009), and *People v. Bailey*, 2013 IL 113690, are inapplicable to defendant's case.

¶ 2    Defendant appeals from the denial of his motion for leave to file a successive postconviction petition, which argues the trial court denied defendant due process by failing to provide separate verdict forms for each theory of murder. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On February 17, 1992, defendant was charged with first degree murder (Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(a)(1)) in that he, without lawful justification and with the intent to kill or do great bodily harm, stabbed Margaret Pfeiffer with a knife in the chest, causing her death. About a year later, on May 5, 1993, the State filed notice of its intent to seek the death penalty under section 9-1(b)(6) of the Criminal Code of 1961 (Criminal Code) (*id.* ¶ 9-1(b)(6)), because defendant committed the murder while in the course of another felony.

¶ 5     On June 15, 1993, defense counsel filed several motions in response to the State's notice of intent to seek the death penalty, which included a motion to bar the death penalty sentence hearing and imposition of the death penalty. The motion alleged that grounds for an enhanced penalty must be alleged in the indictment, and the State failed to allege any of the aggravating factors under section 9-1(b). In its response, the State argued that the cases defendant cited to support his position were inapplicable and did not refer to the applicable death penalty statute.

¶ 6     Defense counsel also filed a motion for bill of particulars and discovery, requesting the court to order the State to identify the felonies allegedly committed by defendant. In its response to the motion, the State argued that there was no obligation to give notice to defendant of its intent to seek the death penalty, and therefore, it had no greater obligation to give defendant notice of the specific felonies which made defendant eligible for the death penalty. The State further asserted that the discovery it provided indicated the felonies

2

defendant committed included, but were not limited to, home invasion, residential burglary, burglary, armed robbery, robbery, and theft.

¶ 7    On July 6, 1993, defense counsel filed a motion to require the sentencing jury to make specific findings. Defense counsel argued that unless the sentencing jury was directed to make specific findings in writing, a reviewing court would not be able to determine if improper factors were relied upon, whether the rehabilitative potential of defendant was considered, and could not prevent the death penalty from being applied capriciously.

¶ 8    On July 15, 1993, the trial court denied defendant's motion for bill of particulars and discovery, noting that the State furnished a sufficient response. On the same day, it also denied defendant's motion to bar the death penalty sentence hearing and imposition of the death penalty and defendant's motion to require the sentencing jury to make specific findings.

¶ 9    On November 1, 1993, defense counsel challenged the imposition of the death sentence again by filing a motion to preclude consideration and imposition of the death sentence. The motion asserted that the State seeking the jury to consider that the killing occurred during the commission of a felony offense both as an element of the offense and as an aggravating factor was improper double enhancement.

¶ 10   On March 29, 1994, the State filed notice of its intent to instruct the jury on multiple theories of murder, including intentional, knowing, and felony murder. At a subsequent pretrial hearing, defense counsel informed the court that—in response to the State's motion to instruct on alternative murder theories—it would file another motion for a bill of particulars. The court found its denial of the defense's previous motion for a bill of

3

particulars was dispositive of whether the State must further "illuminate the defense of the way—of the nature they're going to proceed," and that any instructions issue was not ripe.

¶ 11    Trial began on April 11, 1994. The State presented evidence that defendant entered his girlfriend's apartment that was shared with Margaret Pfeiffer, stabbed Pfeiffer multiple times, causing her death, and then took Pfeiffer's bank and credit cards. Defense counsel presented the theory that defendant was under the influence of cocaine and alcohol, and defendant's voluntary intoxication rendered him incapable of having the intent required to commit murder. The defense also argued there was insufficient evidence.

¶ 12    At the jury instruction conference, defense counsel again raised an objection to instructing the jury on the theories of felony murder because it was "unduly prejudicial to [defendant] to have to fend off these different theories at this juncture." The court held that the instructions were proper.

¶ 13    Ultimately, the court provided the jury with an instruction that stated:

"A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual;

or

he knows that such acts will cause death to that individual;

or

he knows that such acts create a strong probability of death or great bodily harm to that individual;

or

4

he is committing any one of the following offenses: Home Invasion, Residential Burglary or Armed Robbery."

¶ 14 The court also provided instructions on the offenses of home invasion, residential burglary, and armed robbery, as well as the voluntary intoxication defense. The jury found defendant guilty of first degree murder under a general murder verdict form that stated: "We, the jury, find [defendant] Guilty of the offense of First Degree Murder."

¶ 15 The case then proceeded to the first stage of sentencing where the jury would determine whether defendant was eligible for the death penalty. The State sought the death penalty based on the aggravating factor under section 9-1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(b)(6)). Accordingly, the court instructed the jury that to be eligible for the death penalty, the State must prove:

"FIRST PROPOSITION That the defendant was 18 years old or older at the time of

the commission of the murder of which he was found guilty at the trial of this case

and

SECOND PROPOSITION That one or more statutory aggravating factors exist

The murdered person was killed in the course of another felony if

the murdered person was actually killed by the defendant;

and

in performing the acts which caused the death of the murdered person,

the defendant acted with the intent to kill the murdered person or with

the knowledge that his acts created a strong probability of death or

great bodily harm to the murdered person;

5

and

the other felony was one or more of the following: armed robbery and/or residential burglary and/or home invasion."

¶ 16    The court also instructed the jury on home invasion, armed robbery, and residential burglary. The jury found defendant eligible for the death penalty. At the second phase of the death penalty hearing, however, the jury determined that a sentence other than death should be imposed.

¶ 17    Defense counsel filed a posttrial motion, arguing, *inter alia*, that the court erred in denying defense's motion to preclude the death penalty, motion for a bill of particulars, and motion to require the sentencing jury to make specific findings. The court denied the motion.

¶ 18    At the sentencing hearing, the State argued for the imposition of a natural life sentence, under Ill. Rev. Stat. 1991, ch. 38, ¶ 1005-8-1, based on the jury's previous finding that defendant was eligible to receive the death penalty or, alternatively, because 24 stab wounds met the definition of brutal or heinous behavior. Defense counsel argued that defendant lacked a criminal history and "mental health, emotional, and drug-induced reasons" caused the murder. Consequently, defense counsel requested the court impose a sentence of less than 60 years' imprisonment. After considering the aggravating and mitigating factors, the court sentenced defendant to a term of natural life imprisonment without parole. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Tucker*, No. 5-94-0409 (1997) (unpublished order under Illinois Supreme Court Rule 23).

6

¶ 19    On May 11, 1998, defendant filed a postconviction petition, arguing, *inter alia*, that defendant was denied due process by the State's failure to notify defendant prior to trial that his indictment for first degree murder was based on felony murder, which prejudiced defendant from preparing a sufficient argument for his defense, and that appellate counsel was ineffective for failing to raise the issue. On March 20, 2000, following an evidentiary hearing, defendant's petition was denied. On appeal from his postconviction petition, defendant cited to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and argued "that his natural life sentence must be reduced because the Illinois life imprisonment statute violates due process by subjecting a defendant to increased penalties without providing notice of the qualifying facts in the charging instrument." This court affirmed defendant's sentence and found that because the jury unanimously found the aggravating factor that the sentencing court relied on to impose natural life imprisonment, the sentencing court did not violate *Apprendi*. *People v. Tucker*, 322 Ill. App. 3d 1058 (2001) (table) (unpublished order under Supreme Court Rule 23).

¶ 20    On December 20, 2018, defendant filed a motion for leave to file a successive postconviction petition, arguing the trial court's denial of defendant's motion to require the jury to make specific findings during the death eligibility phase violated defendant's due process rights. Defendant explained that under *People v. Smith*, 233 Ill. 2d 1 (2009), and *People v. Bailey*, 2013 IL 113690, a trial court errs in denying a defendant's request for individual verdict forms for various theories of murder where the sentencing consequences would differ under a general verdict form. Therefore, according to defendant, the general verdict form for first degree murder must be interpreted as a finding of guilty for felony

7

murder and an acquittal of intentional and knowing murder. Defendant contended, as a result, he was not eligible for the death penalty nor a term of natural life imprisonment because there was no specific finding by the jury regarding intent. The motion also argued that under this reasoning, defendant was actually innocent of intentional or knowing murder. As to cause for failing to raise the issue earlier, defendant asserted that the issue was not available to him at the time of his trial.

¶ 21 On January 8, 2019, the circuit court denied defendant's motion for leave to file a successive postconviction petition. The court determined that defendant failed to establish cause. In its order, the circuit court explained that while defendant explained why he did not raise the defense at the time of his trial, he failed to explain why he did not raise the issue in his initial postconviction proceeding, as required by Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2018)).

¶ 22 On February 12, 2019, defendant filed a motion to reconsider, contending that he never raised the separate verdict issue before because the claim was not available until—at the earliest—2009 when *Smith* was decided or 2013 when *Bailey* was decided. The circuit court denied the motion as untimely and noted that the motion failed to set forth any valid basis for reconsideration. This court subsequently granted defendant leave to file a late notice of appeal pursuant to Illinois Supreme Court Rule 606(c) (eff. July 1, 2017).

¶ 23 II. ANALYSIS

¶ 24 On appeal, defendant argues that the circuit court erred in denying his motion for leave to file a successive petition because his motion showed the required cause and prejudice, and also properly alleged actual innocence. Defendant contends, under *Smith*

8

and *Bailey*, the trial court violated his due process rights by failing to provide separate verdict forms for each theory of murder. He claims that counsel sufficiently made the trial court aware of the need for separate murder verdict forms through counsel's (1) motion to require the sentencing jury to make specific findings; (2) motion to preclude the consideration and imposition of the death penalty because the State seeking felony murder as an element of the offense and as an aggravating factor was improper double enhancement; and (3) objection to the felony murder jury instructions based on counsel's pretrial motion for bill of particulars and discovery that argued the State's failure to identify the felonies allegedly committed prejudiced defendant by preventing the defense from being adequately prepared to defend those accusations. According to defendant, because the court failed to provide separate verdict forms, his general verdict must be interpreted at a finding of guilt on the felony murder and he was not subject to a death sentence under section 9-1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(b)(6)) or a natural life imprisonment (*id*. ¶ 1005-8-1). Based on this conclusion, defendant further contends he was actually innocent of intentional murder.

¶ 25    The Post-Conviction Hearing Act (Act) provides a statutory method for criminal defendants to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of only one postconviction petition. *Id.* §§ 122-1(f), 122-3; *People v. Edwards*, 2012 IL 111711, ¶ 22. A defendant, however, may obtain leave of court to file a successive postconviction petition " 'when fundamental fairness so requires.' " *People v. Coleman*,

9

2013 IL 113307, ¶ 81 (quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)); see 725 ILCS 5/122-1(f) (West 2018).

¶ 26    The statutory bar against successive petitions will be relaxed under two circumstances. The first is where defendant can satisfy the "cause-and-prejudice test." 725 ILCS 5/122-1(f) (West 2018). To establish "cause" defendant must identify "any objective factor, external to the defense, which impeded the [defendant's] ability to raise a specific claim in the initial post-conviction proceeding." *Pitsonbarger*, 205 Ill. 2d at 462; 725 ILCS 5/122-1(f) (West 2018). The "prejudice" prong is met where defendant shows that the constitutional error "so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122-1(f) (West 2018).

¶ 27    The second exception to the rule of filing one postconviction petition is a claim of actual innocence. *Coleman*, 2013 IL 113307, ¶ 83. To establish this claim, a defendant "must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *Id.* ¶ 96.

¶ 28    In addressing a motion for leave to file a successive postconviction petition, the court conducts "a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24. The motion need only to make a *prima facie* showing of cause and prejudice. *Id.* "[W]hen it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings," defendant's motion should be denied. *People v. Dorsey*, 2021 IL 123010, ¶ 33. The sufficiency of a motion for leave to

10

file a successive postconviction petition presents a question of law that we review *de novo*. *Id.*

¶ 29 The circuit court found defendant failed to establish a claim under either exception. With respect to the cause-and-prejudice test, the court found that, while defendant explained why he did not raise his claim at the time of trial, he failed to explain why he did not raise the argument in his initial postconviction petition. Accordingly, the court found that defendant failed to establish cause.

¶ 30 On appeal, defendant contends because *Smith* and *Bailey* created a new substantive rule and *Smith* was decided 11 years after his initial postconviction petition, he established cause. To the contrary, the State argues—*inter alia*—that *Smith* and *Bailey* did not create a substantive rule. According to the State, defendant consequently failed to establish the cause necessary for leave to file a successive postconviction petition. We decline to determine whether *Smith* and *Bailey* created a new substantive rule, because we agree with the State's alternative argument that *Smith* and *Bailey* do not apply to this case. See *People v. Burchell*, 2018 IL App (5th) 170079, ¶ 9 (where the question on appeal regards the correctness of the result, rather than the reasoning upon which that result was reached, "[w]e may affirm the ruling of the trial court on any basis supported by the record").

¶ 31 A jury may return a general verdict of guilty for first degree murder "even if there is no juror unanimity with regard to *the means* by which the murder was committed." (Emphasis in original.) *People v. Smith*, 233 Ill. 2d 1, 16 (2009). Where a defendant is convicted under a general verdict form and the indictment charged multiple counts of murder based on different theories, it is presumed that defendant was convicted of the most

11

serious offense—intentional murder—and the convictions on the other theories of murder are vacated. *Id.* at 21. Although the use of a general verdict form, under such circumstances, is constitutionally permissible (*id.* at 14), the sentencing consequences of a conviction under a general verdict may prejudice defendant. *Id.* at 23. This is so because a general verdict fails to provide the necessary specification. *Id.*

¶ 32    For example, because "the predicate felony underlying a charge of felony murder is a lesser-included offense of felony murder," a defendant convicted of felony murder, but not intentional or knowing murder, may not be convicted of the underlying felony. *Id.* at 17. However, there is no such limitation if defendant is found guilty of intentional or knowing murder. *Id.* at 17-18. Therefore, in a case where defendant is charged with intentional, knowing, and felony murder, as well as the underlying predicate felony, the use of separate verdicts on each theory of murder would afford the opportunity for the jury to find defendant guilty of only felony murder, which precludes a conviction and sentence of the underlying felony. See *id.* Whereas a conviction under a general verdict would presume the jury found defendant guilty of the more serious intentional murder, which allows a conviction and sentence on the underlying predicate felony. See *id.* at 18.

¶ 33    Accordingly, in *Smith*, the Illinois Supreme Court held that it is an abuse of discretion for a court to deny defendant's request for specific verdict forms where specific findings by the jury regarding the offenses charged could result in differing sentencing consequences. *Id.* at 23. It reasoned that a court violates due process when it "[denies] a defendant the opportunity to have the jury decide his theory of defense" and allows the

12

presumption from a conviction under a general verdict—in that defendant was convicted of the most serious offense—to substitute the jury's actual findings. *Id.*

¶ 34    Later, in *Bailey*, the Illinois Supreme Court reaffirmed its *Smith* holding. *Bailey*, 2013 IL 113690, ¶ 57. *Bailey* addressed a situation—similar to the case at hand—where defendant was charged with three theories of murder, the jury returned a general verdict of guilty, and defendant was found eligible for the death penalty under section 9-1(b)(6) of the Criminal Code (720 ILCS 5/9-1(b)(6) (West 2006)). *Id.* ¶¶ 1-13. The court determined that "if the jury had been given separate verdict forms and had acquitted defendant of intentional or knowing murder, application of section 9-1(b)(6) would have been foreclosed because the verdict would have negated an essential element of this eligibility factor," *i.e.*, intent. *Id.* ¶ 56. As such, it held the trial court erred in refusing defendant's request for separate verdict forms because the theory upon which defendant was found guilty had differing sentencing consequences. *Id.* ¶ 57.

¶ 35    The court, however, has clarified that *Smith* "did not establish a rule that the court must act *sua sponte* to give a specific verdict form." *People v. Davis*, 233 Ill. 2d 244, 273 (2009). On appeal, defendant does not contend the court here should have acted *sua sponte* but claims that counsel's pretrial motions sufficiently signaled to the court the need for separate verdict forms. He argues that *Bailey* supports this position. We disagree.

¶ 36    In *Bailey*, the State argued that defendant failed to preserve a *Smith* error where defense counsel requested a separate felony murder verdict form in chambers but failed to object to the use of a pattern general verdict form. *Bailey*, 2013 IL 113690, ¶ 38. The court disagreed and noted that counsel stated " 'No objection,' " then immediately referred to the

13

previous in-chamber discussion regarding verdict forms and attempted to explain his request for separate verdict forms before the court interrupted counsel. *Id.* ¶ 40. "The State objected 'to breaking it down to different types of murder,' and the trial court denied defendant's request." *Id.* The court found that the trial court's previous refusal to use a separate felony murder verdict form foreclosed any future request for other verdict forms and the record demonstrated counsel clearly intended to document that ruling. *Id.* ¶ 41.

¶ 37 *Bailey* is distinguishable because, here, there was no request for a felony murder verdict form or separate verdict forms at *any time*. Defense counsel neither objected to the general verdict form nor provided a verdict form that indicated a need to make specific findings regarding the separate theories of murder.

¶ 38 Defense counsel's pretrial motions also did not sufficiently raise a request or indicate a need for separate verdict forms. The defense's motion to require the sentencing jury to make specific findings concerned matters that occurred after defendant was found guilty, not whether the jury should make specific findings regarding the charged offenses when determining guilt. Similarly, defense counsel's motion to preclude consideration and imposition of the death sentence—arguing the State seeking felony murder as an element of the offense and as an aggravating factor is improper double enhancement—also did not relate to separate verdict forms. "Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty" (*People v. Thomas*, 171 Ill. 2d 207, 223 (1996)) and thus presents a separate issue from *Smith* and *Bailey*, which concerns whether the use of separate verdict forms could have resulted in the jury negating an essential element of eligibility for a

14

specific sentence (*Bailey*, 2013 IL 113690, ¶¶ 56-57). Counsel's objection to the felony murder instructions, at the instruction conference, also did not indicate a need for separate verdict forms where the objection reiterated counsel's argument—presented in his pretrial motion requesting a bill of particulars—that defendant was prejudiced by the State's untimely identification of the predicate felonies for felony murder because he was prevented from adequately preparing a defense for those accusations.

¶ 39   We decline to find that a few pretrial motions that attacked the charge of felony murder based on untimely notice, challenged the imposition of the death sentence on double enhancement grounds, or concerned aggravating factors in sentencing, sufficiently raised a request for separate verdict forms. Due to defendant's failure to request separate verdict forms, *Smith* and *Bailey* do not apply to this case. The circuit court therefore did not err in finding defendant failed to meet the cause-and-prejudice test.

¶ 40   Defendant also argues that the circuit court erred in denying his petition with respect to his actual innocence claim that is based on an alleged *Smith* error. Because we find *Smith* and *Bailey* do not apply to these set of facts, defendant's actual innocence claim also fails. Accordingly, we affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 41                                III. CONCLUSION

¶ 42   For the reasons stated above, we affirm the circuit court's denial of defendant's petition for leave to file a successive postconviction petition.


¶ 43   Affirmed.

15